UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Crystal D. Sargent

    v.

Atrium Medical Corporation,
Maquet Cardiovascular US
Sales, LLC, and Getinge AB

Civil No. 17-cv-740 -LM
Opinion No. 2019 DNH 160

In re: Atrium Medical Corp.
C-QUR Mesh Products Liability
Litigation (MDL No. 2753)

O R D E R

Crystal Sargent brings suit against Atrium Medical Corporation ("Atrium"), a medical device company that manufactured and sold C-QUR mesh, and two related companies, Maquet Cardiovascular US Sales, LLC ("Maquet") and Getinge AB ("Getinge"), alleging product liability claims and breach of warranty claims. Sargent's suit is part of a multi-district litigation ("MDL") proceeding involving claims that C-QUR mesh was, among other things, defective and unreasonably dangerous and caused injury when surgically implanted for hernia repair. The case was selected in the MDL proceeding for the Initial Discovery Pool, making it a bellwether case. Defendants Atrium and Maquet move to dismiss on a variety of grounds.[1] Sargent objects.

---

[1] Getinge has filed a separate motion to dismiss in the main MDL case contending that the court lacks personal jurisdiction over it. That motion remains pending. Getinge does not join in the instant motion.

**STANDARD OF REVIEW**

Under Rule 12(b)(6), the court must accept the factual allegations in the complaint as true, construe reasonable inferences in the plaintiff's favor, and "determine whether the factual allegations in the plaintiff's complaint set forth a plausible claim upon which relief may be granted." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71 (1st Cir. 2014) (internal quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

**BACKGROUND**

Sargent lived in Alabama during the events at issue in this case, and still lives there. Sargent had surgery on July 23, 2012, at University of South Alabama Medical Center in Mobile, Alabama, to repair a ventral hernia. Sargent's physicians used a piece of C-QUR mesh to repair the hernia. On April 14, 2014, Sargent went back to the Medical Center because her hernia had recurred. She underwent another surgery to repair the hernia. During the operation it was found that omentum and bowel were adhesed to Sargent's mesh, which also had significant scar tissue.

Atrium, which designed, marketed, and sold the C-QUR mesh that was implanted into Sargent, is located in New Hampshire. Maquet is located in New Jersey, and Getinge is a Swedish corporation. Sargent alleges that Maquet and Getinge are responsible for Atrium's actions and exercised control over Atrium with respect to oversight and compliance with applicable safety standards.

Sargent alleges, among other things, that defendants designed, manufactured, marketed, and sold C-QUR mesh to be used by surgeons for hernia repair. C-QUR mesh was intended to be permanently implanted for those repairs, and defendants represented that C-QUR mesh was safe and effective for that purpose. She further alleges that C-QUR mesh was not safe or effective for its intended purpose, that defendants failed to adequately research and test it to determine the risks and benefits of the mesh, and that they failed to warn of risks although they had been notified that the mesh was causing widespread catastrophic complications. Sargent alleges claims of negligence (Count I), strict liability – design defect (Count II), strict liability – manufacturing defect (Count III), strict liability – failure to warn (Count IV), breach of express warranty (Count V), breach of implied warranties of merchantability and fitness of purpose (Count VI), and punitive damages (Count VII).

## DISCUSSION

Defendants Atrium and Maquet move to dismiss Sargent's claims, contending that they are barred by the applicable statutes of limitations, that Alabama law applies to liability, and that the strict liability claims (Counts II-IV) are not cognizable under Alabama law. Defendants also contend that Sargent's claim for punitive damages must be dismissed because it does not state a cause of action. Sargent objects, arguing that her claims are not time-barred, that New Hampshire law applies to her claims, and that her claims are sufficiently pleaded.

I. Statute of Limitations

The parties agree that New Hampshire's statutes of limitations, as procedural rules of the forum state, apply in this case. See TIG Ins. Co. v. EIFlow Ins. Ltd., No. 14-cv-459-JL, 2015

WL 5714686, at *3 (D.N.H. Sept. 29, 2015) (discussing circumstances under which it is appropriate for this court, sitting in diversity, to apply New Hampshire's statute of limitations). They further agree that Sargent's product liability claims, Counts I through IV, are governed by RSA 508:4, I, and the breach of warranty claims, Counts V and VI, are governed by RSA 382-A:2-725.

    A. <u>Product Liability Claims</u>

Under New Hampshire law, "[e]xcept as otherwise provided by law, all personal actions, . . . may be brought only within 3 years of the act or omission complained of."  RSA 508:4, I. An exception to that time limit exists

> when the injury and its causal relationship to the act or omission were not discovered and could not reasonably have been discovered at the time of the act or omission, the action shall be commenced within 3 years of the time the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the injury and its causal relationship to the act or omission complained of.

RSA 508:4, I.  If the defendant meets the initial burden of showing that the action was not brought within three years of the underlying events, to avoid dismissal, the plaintiff must show that the discovery rule or another tolling doctrine, such as the fraudulent concealment rule, applies.  Beane v. Dana S. Beane & Co., P.C., 160 N.H. 708, 712 (2010).

"[T]he fraudulent concealment rule states that when facts essential to the cause of action are fraudulently concealed, the statute of limitations is tolled until the plaintiff has discovered such facts or could have done so in the exercise of reasonable diligence." Bricker v. Putnam, 128 N.H. 162, 165 (1986).  The equitable purpose of the fraudulent concealment rule in tolling the limitations period is to prevent the wrongdoer from receiving and keeping the benefit of its fraudulent conduct.  Lakeman v. LaFrance, 102 N.H. 300, 303 (1959).  Similarly, the doctrine of

equitable tolling delays the limitations deadline when the plaintiff "was prevented in some extraordinary way from exercising his or her rights." Portsmouth Country Club v. Town of Greenland, 152 N.H. 617, 623 (2005).

Defendants argue that Sargent's product liability claims are time-barred because the mesh was implanted in July 2012, which is more than three years before she brought this action. In response, Sargent invokes the protection of the discovery rule and the doctrines of fraudulent concealment and equitable tolling. She alleges that defendants concealed the defective design of the C-QUR mesh that was implanted to repair her hernia and that they misled physicians and surgeons about the mesh product's efficacy and serious complications.[2] See, e.g., doc. no. 63 at ¶¶ 34, 49, 50, 51, 52, 55, 56, 63, 114, 116, 118, 122, 128, 132, 154, 155, 156, & 157.

"The district court may grant a motion to dismiss based on a defendant's affirmative defense of a statute of limitations when the pleader's allegations leave no doubt that an asserted claim is time-barred." DeGrandis v. Children's Hosp. Boston, 806 F.3d 13, 17 (1st Cir. 2015) (internal quotation marks omitted); see also Rodi v. S. New Eng. Sch. of Law, 389 F.3d 5, 17 (1st Cir. 2004). Taking Sargent's allegations in the light most favorable to her and resolving reasonable inferences in her favor, the allegations are sufficient to preclude dismissal of her product liability claims as time-barred at this stage of the litigation. If, as the case develops through discovery, defendants find facts that support the statute-of-limitations defense, they may raise that defense at an appropriate time, such as in a motion for summary judgment.

---

[2] Sargent also contends that defendants have not shown that she could have discovered the connection between her injury and the defective condition of the mesh within the limitations period. Such an argument mistakenly puts the burden on defendants to show that the discovery rule and other tolling doctrines do not apply. As stated above, under New Hampshire law, once a defendant shows that the action was filed beyond the limitations period, the plaintiff bears the burden of showing that the time is tolled. Beane, 160 N.H. at 712.

5

B. Breach of Warranty Claims

Sargent alleges both breach of express warranty (Count V) and breach of implied warranties (Count VI) claims. The parties agree that RSA 382-A:2-725 provides the applicable statute of limitations for the breach of warranty claims.

RSA 382-A:2-725(1) provides that "[a]n action for breach of any contract for sale must be commenced within four years after the cause of action has accrued." "A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." RSA 382-A:2-725(2). "A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." Id. The discovery rule for future performance does not apply to implied warranties. Kelleher v. Marvin Lumber & Cedar Co., 152 N.H. 813, 853 (2005). While equitable tolling and the fraudulent concealment rule may extend the limitation period for purposes of a claim of breach of an express warranty, they do not apply to breach of implied warranties claims. Begley v. Windsor Surry Co., Civ. No. 17-cv-317-LM, 2018 WL 1401796, at *8 (D.N.H. Mar. 19, 2018) (relying on Lockheed Martin Corp. v. RFI Supply, Inc. 440 F.3d 549, 556-57 (1st Cir. 2006)).

Defendants assert that the breach of warranty claims accrued when the mesh product was implanted in July 2012, which is more than four years before Sargent brought suit in December 2017. Sargent contends that defendants' warranties extended to future performance of the mesh and, therefore, the accrual date is extended to when the breach of warranty was discovered or should have been discovered. She further contends that she could not have been aware of the defects in the mesh until at least after her second surgery in April 2014, which is less than four

6

years before she brought suit. In their reply, defendants argue that the future performance extension does not apply because no such explicit warranty was made and that the future performance extension does not apply to breach of implied warranty claims.

As stated above, the discovery rule for future performance does not apply to breach of implied warranty claims. Nor does equitable tolling or fraudulent concealment. Therefore, Sargent's claim for breach of implied warranties, Count VI, accrued on July 23, 2012, when the mesh was implanted. Because Sargent brought this suit more than four years later, Count VI is dismissed as untimely.

The discovery rule for future performance does apply to Sargent's breach of express warranty claim if defendants' express language warranted the performance of the mesh for a future period of time or permanently. [Kelleher, 152 N.H. at 828](). At this stage of the litigation, the court is limited to the allegations in the amended complaint and does not have defendants' actual advertising or marketing materials. Sargent alleges that defendants warranted that the mesh product was safe and fit for its intended purpose, which was to be permanently implanted into patients. As such, the court may make the reasonable inference that in advertising, marketing, and otherwise promoting C-QUR mesh, defendants expressly warranted the future performance of the mesh product after implant. Therefore, Sargent's allegations are sufficient to preclude dismissal of the breach of express warranty claim, Count V, as time-barred at this stage of the litigation. Defendants' statute-of-limitations defense to this claim is better raised in a properly supported motion for summary judgment.

7

II. Choice of Law

Defendants contend that Alabama has an interest in the case because Sargent is a resident of the state and her alleged injury occurred there. They further contend that a choice-of-law analysis is necessary because Alabama's product liability law conflicts with New Hampshire's product liability law and that, under New Hampshire's choice-of-law principles, Alabama law governs. Sargent argues that a choice-of-law analysis is premature because additional factual development is necessary and that defendants have not sufficiently identified a conflict between New Hampshire and Alabama law. She further contends that if the court engages in a choice-of-law analysis, New Hampshire law governs.

A. Timing of Choice of Law

Sargent includes with her objection a section titled "Ripeness of Choice of Law Determination." Doc. no. 69-1 at 3. She cites cases where courts have found that discovery or development of the record was necessary to resolve the issue of a choice of law. Sargent, however, does not identify any missing information that would be necessary for a choice-of-law determination here or actually contend that this case is not sufficiently developed at this stage. Therefore, Sargent has not shown that a choice-of-law determination is premature, and the court employs the analysis.

B. Standard

The parties agree that New Hampshire choice-of-law principles govern the choice of law in this bellwether case. See, e.g., Lexington Ins. Co. v. Gen. Acc. Ins. Co. of Am., 338 F.3d 42, 46 (1st Cir. 2003) (noting that in "determining what state law is relevant, a federal court must

apply the choice-of-law framework of the forum state"). "Under New Hampshire choice-of-law principles, when more than one state may have an interest in the suit and the choice involves substantive law, the court must first decide whether relevant New Hampshire law actually conflicts with the laws of the other interested states." SIG Arms Inc. v. Emp'rs Ins. of Wausau, 122 F. Supp. 2d 255, 258–59 (D.N.H. 2000). An actual conflict exists only when application of the laws of an interested state other than the forum would change the outcome. Lambert v. Kysar, 983 F.2d 1110, 1114 (1st Cir. 1993). When no actual conflict is shown, the court will apply the law of the forum state which, in this case, is New Hampshire. Aftokinito Props, Inc. v. Millbrook Ventures, LLC, No. 09-cv-415-JD, 2010 WL 3168295, at *3 (D.N.H. Aug. 9, 2010). The party who asserts that the law of another state is different from the law of the forum state bears the burden of proving the content of the foreign law. SIG Arms, 122 F. Supp. 2d at 259.

### C. Actual Conflict

New Hampshire and Alabama are interested states in this case. Defendants contend that Alabama law applies to the liability portions of all of Sargent's claims. They argue that a conflict exists between Alabama and New Hampshire law because Alabama follows the Extended Manufacturer's Liability Doctrine ("AEMLD"), which has not adopted strict product liability under the Restatement (Second) of Torts, § 402A, while New Hampshire does allow claims for strict product liability against manufacturers.

First, the court notes that defendants acknowledge that under the doctrine of dépeçage, each legal issue is considered separately. See Putnam Resources v. Pateman, 958 F.2d 448, 465 (1st Cir. 1992); Lacaillade v. Loignon Champ-Carr, Inc., No. 10-cv-68-JD, 2011 WL 4738654, at *1 (D.N.H. Oct. 7, 2011). Here, the legal standards for Sargent's claims require different

9

elements of proof. Therefore, dépeçage requires the court to consider the choice-of-law question separately for each claim.[3] Defendants identify a purported conflict with respect to Sargent's strict product liability claims in Counts II-IV. Because defendants do not address or attempt to identify an actual conflict with respect to Sargent's negligence claim (Count I) or breach of warranty claims (Counts V-VI), New Hampshire law applies to the liability portion of those claims.[4] See Aftokinito, 2010 WL 3168295, at *3.

With regard to Sargent's strict product liability claims in Counts II-IV, defendants have not carried their burden to show an actual conflict. Defendants note that Alabama courts have held that an "action brought pursuant to the AEMLD is similar to a strict liability tort action under § 402A, Restatement (Second) of Torts, (1964)." Dennis By & Through Dennis v. Am. Honda Motor Co., 585 So. 2d 1336, 1338 (Ala. 1991). Defendants state that despite that similarity, Alabama, unlike New Hampshire, retains a fault-based component for strict liability tort claims. Id.

---

[3] Despite noting the applicability of dépeçage in their memorandum in support of their motion to dismiss, defendants argue in their reply that the court should not consider each claim separately. They contend that a court should not apply dépeçage when a plaintiff's claims are "inextricably intertwined," relying on a case from the Eastern District of Wisconsin. See Stupak v. Hoffman-La Roche, Inc., 287 F. Supp. 2d 968, 971-72 (E.D. Wis. 2003). A recent case in that district suggests that the "inextricably intertwined" principle may not be a correct statement of the law. See PCM Salles Inv. Vantage Point Corp., No. 18-CV-1230-JPS, 2019 WL 3070078, at *5 n.1 (E.D. Wis. July 12, 2019) (noting that the "inextricably intertwined" theory came from no "source of law, but rather from a party's brief" and that "[n]o Wisconsin appellate courts, or the Seventh Circuit for that matter, have endorsed the 'inextricably intertwined' phrase"). Regardless, for the reasons discussed above, defendants have not shown that Sargent's claims are inextricably intertwined.

[4] In arguing that the court should engage in a choice-of-law analysis, defendants note certain differences between New Hampshire and Alabama law as to a breach of warranty claim. They fail to show, however, that Sargent could not allege facts that would satisfy the standard imposed by Alabama law. Indeed, although defendants move to dismiss some of Sargent's claims on the merits based on Alabama law, they do not challenge the merits of her breach of warranty claims under that law.

While defendants cite differences in the legal standards under New Hampshire and Alabama law for Sargent's strict product liability claims, Counts II-IV, they fail to show that Sargent could not allege facts that would satisfy the standard imposed by Alabama law. Indeed, Sargent alleges that defendants were negligent in their design and manufacturing of the C-QUR mesh and provides factual allegations in support of that claim. Thus, as Sargent notes, her complaint contains numerous allegations of fault with regard to defendants' design, manufacture, and failure to warn of the dangers of C-QUR mesh.

Therefore, despite some differences, defendants have not shown that an actual conflict exists between New Hampshire and Alabama law for purposes of Sargent's claims in this case. In the absence of a demonstrated actual conflict, the law of New Hampshire controls. See Aftokinito, 2010 WL 3168295, at *3.

III. Merits of the Claims

Defendants move to dismiss Sargent's strict liability claims, Counts II-IV, under Alabama law. Because New Hampshire law governs the claims, defendants' arguments are not relevant.[5]

---

[5] In addition to their general arguments under the AEMLD, defendants also argue that Sargent's failure to warn claim, Count IV, fails because her injuries were not caused by risks that defendants failed to disclose. In support, defendants cite cases applying Alabama law, along with cases from Pennsylvania and Maine and from district courts in Illinois, New York, and the District of Columbia. Defendants have not cited any case applying New Hampshire law or shown how their argument is related to New Hampshire law. Therefore, to the extent defendants intended to move to dismiss Sargent's failure to warn claim in Count IV under New Hampshire law, their motion is denied. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work . . . .").

In addition, defendants challenge Sargent's claim for punitive damages in Count VII. A claim for punitive damages does not set out a "claim for relief" within the meaning of Federal Rule of Civil Procedure 8(a)(2). Instead, it is a request for a remedy and should not be labeled as a separate "count." D'Pergo Custom Guitars, Inc. v. Sweetwater Sound, Inc., No. 17-cv-747-LM, 2018 WL 6519070, at *6 (D.N.H. Dec. 11, 2018). Although Sargent's request for punitive damages is not a separate count, the request remains in the case at this stage of the proceedings. Id. (citing cases).

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss (doc. no. 65) is granted as to Count VI and is otherwise denied.

SO ORDERED.

_____
Landya B. McCafferty
United States District Judge

September 19, 2019

cc: Counsel of Record